**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **OCHO DOE**,<br><br>Plaintiff,<br><br>v.<br><br>**ISLAMIC REPUBLIC OF IRAN**, *et al.*,<br><br>Defendants. | Case No. 26-cv-1557 (CRC) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ocho Doe brings this case against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps ("IRGC"), and the Iranian Ministry of Intelligence and Security ("MOIS") under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a)(1). See Compl. ¶¶ 1–2, 10. Doe requests that the Court authorize alternative service on IRGC by email. See Pl.'s Mot. for Alt. Service ("Mot.") at 4. But 28 U.S.C. § 1608(a) prescribes four exclusive methods for serving IRGC, and email is not one of them. The Court therefore denies Doe's motion.

Section 1608 outlines specific methods of service under FSIA, which differ based on whether the defendant is "a foreign state," 28 U.S.C. § 1608(a), or "an agency or instrumentality of a foreign state," 28 U.S.C. § 1608(b). Which path to follow depends on the foreign entity's principal function. Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 151 (D.C. Cir. 1994). "[I]f the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state." Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003). Because the "power[] to declare and wage war" lies at the heart of sovereignty, United States v. Curtiss-Wright Exp. Corp., 299

U.S. 304, 318 (1936), the "military force which supports the sovereign power" performs a quintessential governmental function, The Schooner Exch. v. McFaddon, 11 U.S. (7 Cranch) 116, 145 (1812) (Marshall, C.J.); see also Thomas Hobbes, LEVIATHAN ch. XVIII (1651) ("[T]he command of the Militia, without other Institution, maketh him that hath it Sovereign."). "A nation's armed forces," in other words, "are clearly . . . governmental." Roeder, 333 F.3d at 234; see also Transaero, 30 F.3d at 153 ("[A]rmed forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself.").

"IRGC, as a branch of the Iranian Armed Forces, performs a military function." Holladay v. Islamic Republic of Iran, 406 F. Supp. 3d 55, 59 (D.D.C. 2019); see Compl. ¶ 7 ("Defendant Islamic Revolutionary Guard Corps . . . is the military organization established by Ayatollah Khomeini after the 1979 Iranian Revolution."). It is thus "well-established" under the core-functions test that IRGC is the "functional equivalent of Iran"—not an agency or instrumentality. Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 80–81 (D.D.C. 2017) (Cooper, J.). On this point, the judges of this Court are remarkably aligned. See, e.g., Dehnoushi v. Islamic Republic of Iran, 2026 WL 1786419, at *1–2 (D.D.C. June 22, 2026) (Moss, J.); Lakestani v. Islamic Republic of Iran, 2025 WL 3140553, at *1 n.2 (D.D.C. Nov. 10, 2025) (Cobb, J.); Swinney v. Islamic Republic of Iran, 2025 WL 1547694, at *1 (D.D.C. May 30, 2025) (Reyes, J.); Nahadi v. Islamic Republic of Iran, 2025 WL 1207074, at *2–3 (D.D.C. Apr. 25, 2025) (Chutkan, J.); Abedinigalangashy v. Gov't of the Islamic Republic of Iran, 2024 WL 4227133, at *3 (D.D.C. Sept. 18, 2024) (Boasberg, J.); Hansen v. Islamic Republic of Iran, 2024 WL 3026517, at *3 (D.D.C. June 17, 2024) (Friedrich, J.); Selig v. Islamic Republic of Iran, 573 F. Supp. 3d 40, 62 (D.D.C. 2021) (McFadden, J.); Est. of Fishbeck v. Islamic Republic of Iran, 2021 WL 6808189, at *2 (D.D.C. Mar. 1, 2021) (Cooper, J.); Levinson v. Islamic

Republic of Iran, 443 F. Supp. 3d 158, 170 n.11 (D.D.C. 2020) (Kelly, J.); Akins v. Islamic Republic of Iran, 332 F. Supp. 3d 1, 33 (D.D.C. 2018) (Howell, J.); Azadeh v. Gov't of Islamic Republic of Iran, 2018 WL 4232913, at *13 n.6 (D.D.C. Sept. 5, 2018) (Jackson, J.); Flanagan v. Islamic Republic of Iran, 87 F. Supp. 3d 93, 114 (D.D.C. 2015) (Contreras, J.); Ben-Rafael v. Islamic Republic of Iran, 718 F. Supp. 2d 25, 32–33 (D.D.C. 2010) (Huvelle, J.); Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 19 (D.D.C. 2009) (Friedman, J.); Rimkus v. Islamic Republic of Iran, 575 F. Supp. 2d 181, 199–200 (D.D.C. 2008) (Lamberth, J.); Nikbin v. Islamic Republic of Iran, 471 F. Supp. 2d 53, 59 (D.D.C. 2007) (Bates, J.); Holland v. Islamic Republic of Iran, 496 F. Supp. 2d 1, 32 (D.D.C. 2005) (Kollar–Kotelly, J.). Indeed, even Doe took this position in his complaint. See Compl. ¶ 9 ("Pursuant to the test established by the . . . D.C. Circuit, the IRGC . . . must be treated as the State of Iran itself.").

Doe has since changed course, however, and now stresses that IRGC is only "a parallel military institution to Iran's regular armed forces," the Artesh. Mot. at 11 (citation omitted). But the existence of another Iranian military force does not make IRGC any less one. See, e.g., Nahadi, 2025 WL 1207074, at *3 (concluding IRGC qualifies as a foreign state precisely because it is a "parallel military institution to Iran's regular armed forces" (citation omitted)). Doe's proffered record confirms as much. IRGC's "military operations include a ground force, navy, air force, . . . and cyberattack bureau, with [up to] 600,000 soldiers in each branch." Mot., Ex. E-5 at 3, Graham Owens, *Serious Business: The Iranian Revolutionary Guard Corps and the Sports Industry*, 19 YALE J. INT'L AFFS. 3 (May 23, 2024). "Among its many prominent military duties, [IRGC] operates Iran's formidable ballistic missile arsenal and oversees the Quds Force, an expeditionary arm that partners with Iran's various regional affiliates, including Hamas and Hezbollah." Id. Ex. E-2 at 2–3, *The Islamic Revolutionary Guard Corps (IRGC)*, COUNCIL ON

FOREIGN RELATIONS 2–3 (Jan. 30, 2026). IRGC is therefore "a foreign military force," even if it is not Iran's *sole* military force. Transaero, 30 F.3d at 153.

Doe next emphasizes that IRGC engages in many commercial activities. See Mot. at 13–19. Maybe so. But the Court's inquiry focuses on IRGC's "core" function, and Doe has not shown that "IRGC has abandoned its role as a paramilitary organization in favor of becoming a primarily commercial entity." Rimkus, 575 F. Supp. 2d at 200. If anything, IRGC appears to be performing more governmental functions than ever. See Mot., Ex. E-3 at 2–3, Jason Ma, *Iran's Islamic Revolutionary Guard Controls a Sprawling Business Empire That Dominates the Economy*, FORTUNE (Mar. 2, 2026) ("Following the death of Supreme Leader Ali Khamenei in a U.S.-Israeli airstrike over the weekend, the IRGC has emerged as a potential source of new leadership. It's also carrying out Iran's military response to U.S. attacks by firing missiles at commercial vessels in the Strait of Hormuz."[1]); see also Samia Nakhoul et al., *Iran's Guards Seize Wartime Power, Blunting Supreme Leader's Role*, REUTERS (Apr. 28, 2026), https://www.reuters.com/world/asia-pacific/irans-guards-seize-wartime-power-blunting-supreme-leaders-role-2026-04-28/ ("[IRGC] now dominates both military strategy and key political decisions.").

Section 1608(a) sets out "in hierarchical order the following four methods by which '[s]ervice . . . shall be made'" upon a foreign state. Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019) (quoting § 1608(a)). "The first method is by delivery of a copy of the summons and complaint 'in accordance with any special arrangement for service between the plaintiff and the

[1] This quote was obscured in Plaintiff's exhibit by what appears to be a white overlay in the PDF. See Mot., Ex. E-3 at 2. Plaintiff's counsel is reminded of his duty of candor to the Court. If the obscuring of the quoted language was intentional, counsel is admonished to avoid such tactics in the future.

foreign state or political subdivision.'" Id. at 4–5 (quoting § 1608(a)(1)). If there is no special arrangement, "service may be made by the second method, namely, delivery of a copy of the summons and complaint 'in accordance with an applicable international convention on service of judicial documents.'" Id. at 5 (quoting § 1608(a)(2)). If service is not possible under this second method, service can be effected by "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." Id. (quoting § 1608(a)(3)). "Finally, if service cannot be made within 30 days under § 1608(a)(3), service may be effected by sending the service packet 'by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia,' for transmittal 'through diplomatic channels to the foreign state.'" Id. (quoting § 1608(a)(4)). Because Section 1608(a) "prescribes four methods of service . . . in descending order of preference," a plaintiff must "attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." Holladay, 406 F. Supp. 3d at 61 (quoting Ben-Rafael, 540 F. Supp. 2d at 52).

Doe's request for alternative service by email must be denied for two independent reasons. First, "strict adherence to the terms of § 1608(a) is required," Transaero, 30 F.3d at 154, and Doe has not attempted service via *any* of the statute's authorized methods. True, the first two methods are off the table because "[n]o 'special arrangement' governs service between the United States and Iran, nor is Iran party to an international convention on service of judicial documents." Przewozman v. Islamic Republic of Iran, 628 F. Supp. 3d 307, 314 (D.D.C. 2022). But "it cannot be said that section 1608(a)(3) is a categorically 'unavailable' method for serving

Iran," as "it has long been clear from this district's case law that Iran accepts service through the procedures laid out in section 1608(a)(3) with some frequency." Azadeh v. Gov't of Islamic Republic of Iran, 318 F. Supp. 3d 90, 99 (D.D.C. 2018) (Jackson, J.). So Doe had "an obligation to at least try to serve Defendants under that FSIA provision for a period of thirty days prior to pursuing the method of service laid out in section 1608(a)(4)." Id.

No doubt, the current conflict in Iran makes service under § 1608(a)(3) tricky and perhaps impossible. See Mot., Ex. B–D (screenshots suggesting DHL, USPS, and UPS are not delivering to Iran). But difficulty and the prospect of failure does not excuse Doe from trying. Est. of Hirshfeld v. Islamic Republic of Iran, 235 F. Supp. 3d 45, 47 (D.D.C. 2017) ("The exclusive manner to demonstrate that service cannot be effected within thirty days under § 1608(a)(3) is to attempt such service."); see, e.g., Order Denying Mot. for Alt. Service at 3–4 & n.2, Unicon Lmtd. v. Islamic Republic of Afghanistan, 25-cv-4083 (CJN), ECF No. 7 (D.D.C. July 31, 2026) (rejecting plaintiff's reliance on screenshots from USPS and FedEx to show impossibility of service under § 1608(a)(3)). The Court recognizes that "enforcing compliance" with the letter of § 1608(a)(3) may seem like an "empty formality," but in cases "with sensitive diplomatic implications," such as FSIA suits against foreign sovereigns, "the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction." Harrison, 587 U.S. at 18–19.

Second, even if Doe followed § 1608(a) to a tee and still was unable to effect service, the Court could not approve service by email. "A foreign state . . . *must* be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1) (emphasis added). Section 1608(a), in turn, "sets forth the exclusive procedures for service on a foreign state," and "strict adherence" to those terms is mandatory. Transaero, 30 F.3d at 154 (citation omitted). Put another way, the four

"methods set forth in § 1608(a) are the *sole channels* through which service may properly be effected on a foreign sovereign." Doe I v. State of Israel, 400 F. Supp. 2d 86, 101 (D.D.C. 2005) (emphasis added). Email, as § 1608(a)'s text makes clear and as courts have repeatedly found, is not an authorized method. See Doe v. Fed. Republic of Germany, No. 23-cv-6395 (VSB), 2023 WL 6785813, at *9 (S.D.N.Y. Oct. 13, 2023) (collecting cases). So even if every avenue listed in § 1608(a) is truly unavailable, as Plaintiff claims, the Court could not authorize service by email or any other method not specified in the statute. See H.R. Rep. 94–1487, at 24 (1976) (describing service via diplomatic channels under § 1608(a)(4) as the "method of last resort"); Barot v. Embassy of the Republic of Zambia, 785 F.3d 26, 27 (D.C. Cir. 2015) (explaining that neither "substantial compliance . . . nor actual notice" suffices when it comes to serving sovereigns).

The Court sympathizes with Plaintiff's dilemma. "But that does not authorize the Court to reclassify the IRGC" as an agency or instrumentality of Iran "in defiance of binding precedent or to authorize alternative service on a foreign state beyond the methods prescribed by Congress in Section 1608(a)." Dehnoushi, 2026 WL 1786419, at *2. Plaintiff's motion for alternative service thus must be denied.

* * *

Although Plaintiff has failed to properly effect service, dismissal is unwarranted as "there exists a reasonable prospect that service can be obtained" in the future. Barot, 785 F.3d at 29 (quoting Novak v. World Bank, 703 F.2d 1305, 1310 (D.C. Cir. 1983)); see, e.g., Przewozman, 628 F. Supp. 3d at 319. If Doe wants to try again, however, he must first try to serve Defendants in strict compliance with § 1608(a)(3). Specifically, Plaintiff must ask "the Clerk of Court to send a copy of the summons, complaint, and notice of suit, along with Farsi translations of those

documents, to Iran's Minister of Foreign Affairs." Solorio v. Islamic Republic of Iran, No. 23-cv-2660 (AHA/GMH), 2026 WL 2099034, at *3 (D.D.C. July 21, 2026). If USPS, UPS, FedEx, or DHL have not resumed deliveries to Iran, the Court reminds Plaintiff that § 1608(a)(3) authorizes service by "*any* form of mail requiring a signed receipt"—not just U.S.-based carriers. See Minute Order, A.A. v. Islamic Republic of Iran, 25-cv-3671 (DLF) (D.D.C. Jan. 21, 2026) (authorizing service on Iran and IRGC via a "Europe-based mail carrier . . . capable of providing registered mail with return receipt" instead of a "U.S.-based mail carrier, which has refused to ship documents to Iran"). If this approach does not succeed within 30 days of Plaintiff's proper attempt, he must then attempt to serve Defendants in strict compliance with § 1608(a)(4). See 28 U.S.C. § 1608(a)(4). And if that fails, Plaintiff is "free to renew [his] efforts to effect service through the U.S. Department of State and the Swiss Embassy, if and when the Swiss Embassy reopens in Iran." Dehnoushi, 2026 WL 1786419, at *2.

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's [7] Motion for Alternative Service is **DENIED**.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 17, 2026